UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VINSCENT MINOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:19-CV-183-HAB |
| ) | |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

After Plaintiff, Vinscent Minor ("Minor"), underwent podiatric surgery by a doctor employed by the United States Department of Veterans Affairs ("VA"), he alleges his foot pain and mobility worsened. He sued the United States ("the Government") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, seeking damages for malpractice. (Am. Compl. ¶¶ 21–32, ECF No. 5). Before the Court is the Government's Motion for Summary Judgment (ECF No. 21) asserting that Minor's claim is time-barred. This motion is fully briefed and ripe for consideration.

## APPLICABLE STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific

facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## FACTUAL BACKGROUND

Given the limited issue presented in the Government's motion, the Court need not be overly zealous in its review of the factual record as it relates to the details of the care Minor received. Instead, the Court sets out a general factual background regarding Minor's medical condition and treatment with its primary focus being the factual allegations related to Minor's knowledge and/or awareness of the accrual of his malpractice claim. Mindful of this, the facts are as follows:

a. **Facts Relating to Claim Accrual**

Minor is a 67-year old veteran of the United States Marine Corps who served on active duty from June 1979 through June 1988. On January 21, 2015, Minor was evaluated by Dr. Bradley Hammersley ("Dr. Hammersley") at the Podiatry Clinic. He reported a history of pain in his feet that limited ambulation and standing. Dr. Hammersley diagnosed Minor with "pronation bilateral,

flat feet" and recommended orthotics. (ECF No. 25-1 at 3). Dr. Hammersley further advised that surgery may be more effective for a long-term solution to the problem. (*Id.*).

A little shy of four months later, Dr. Hammersley evaluated Minor again. Dr. Hammersley took x-rays of Minor's left foot and diagnosed him with coalition of cuboid-navicular articulation, contracture of Achilles, Tibialis Posterior tendonitis bilateral, and a bony coalition at navicular cuboid joint. (ECF No. 25-2 at 2). Dr. Hammersley believed these conditions warranted surgery and, on July 31, 2015, he performed surgery on Minor. Surgery involved a resection of tarsal coalition, repair of tibialis posterior tendon, calcaneal osteotomy with screw fixation, and gastrocnemius recession.[1] Minor testified he was not told that the surgery would involve the insertion of screws into his foot and he was unaware that screws were inserted into his foot until after surgery. (Dep. of Vinscent Minor at 66; ECF Nos. 22-2 and 25-4).

Minor saw Dr. Hammersley for post-op visits on August 10, August 27, October 13 and November 16, 2015. Dr. Hammersley's notes from these visits collectively indicate that Minor denied pain and discomfort, was healing well, and had improved mobility, at least as compared to his movement pre-surgery. At the October 13 visit, Dr. Hammersley's notes indicate "pt states he is happy that his foot feels better and is glad he did the procedure. Pt is still progressing with physical therapy. Pt states he would like to pursue right foot correction." (ECF No. 25-1 at 8). By the November 16 visit, Dr. Hammersley noted minimal edema, Minor was satisfied with the correction and was walking on uneven terrain and climbing ladders. Any pain was well-controlled when doing normal activities. (*Id.* at 10).

---

[1] Minor asserts that Dr. Hammersley's pre-operative notes documenting discussions with him and Dr. Hammersley's post-operative report as to what surgeries were performed differ substantially. Thus, Minor asserts that there is a genuine issue of material fact as to what procedures Minor consented to. These facts are not relevant to the issue presented to the Court in the Defendant's motion and thus, do not aid the Plaintiff's cause.

After his surgery, Minor also had various visits with his VA physical therapist, Sebastian Rey ("Rey"). On November 9, 2015, Minor saw his VA physical therapist who noted that Plaintiff was progressing well and increasing his range of motion. (ECF No. 25-1 at 9). Two weeks later, on November 23, 2015, Minor met again with the physical therapist who noted that "it appears pt is progressing well with L ankle rehabilitation. Per pt, he was told that the persistent ankle pain on medial aspect during inversion and vice-versa likely is part of his healing and will improve over time." (*Id.* at 11). Notes from a further visit with Rey on December 21, 2015, indicate that Minor had begun experiencing increased pain since his prior late November visit:

> Pt c/o his ankle feels "all jacked up." Glad to have therapy this date as he feels this loosens up his ankle joint. Pt expressed frustration over the persistent ankle pain and that he continues to limp; he would like to be able to just get up out of bed and walk instead of worrying about the ankle hurting and limping due to the pain. Pt reports since he got his new orthopedic shoes and inserts, he's been able to stay up on his feet for up to half the day but once he takes them off, he's done.

(ECF No. 22-1 at 9).

On January 21, 2016, Minor saw Dr. Hammersley for the final time. Minor informed Dr. Hammersley that "he has been getting increased pain and difficulty walking over the past month" (ECF No. 25-1 at 12). The records from that visit note that "pt. states he was doing well but now has more pain over dorsolateral left foot and some tenderness posterior left heel. [T]oe raises are painful to same areas left foot. Pt. states pain is worse." (*Id.*). After reviewing x-rays, Dr. Hammersley concluded that Minor had an anterior process fracture of the left calcaneus, non-displaced, and prominent screw posterior left calcaneus and planned on hardware removal (i.e. removal of the screws). (*Id.*). Dr. Hammersley indicated to Minor that the screws "were not properly in there." (Minor Dep. at 49: Q. So Dr. Hammersley told you that the screws were not properly in there? A. I believe that's what he said, sir."). Minor was returned to wearing a boot and a follow-up was scheduled in one month.

4

Minor did not return to Dr. Hammersley, opting instead to participate in the Veterans Choice Program. When asked why he opted to leave Dr. Hammersley, Minor said "I hate Marion. I hate Marion VA. I just hate it over there." (Minor Dep. at 36). For this reason, on February 2, 2016, Minor visited Dr. Lindsay Keyes, a Veterans Choice, non-VA provider in Kokomo, Indiana where Minor lives. Minor testified that Dr. Keyes office was more convenient for him to attend appointments. (Minor Dep. at 65). In her notes from this initial appointment, Dr. Keyes indicated that Minor told her that he had previous left foot surgery and the screw is coming out, "he just feels that the surgery didn't work for him and he is unable to do activities like he thought he would." (ECF No. 25-8 at 2). Dr. Keyes' review of Minor's x-rays confirmed Dr. Hammersley's findings as there were "very long prominent screws with posterior displacement under the skin on the back of the calcaneus." (ECF No. 22-1 at 25). Dr. Keyes then discussed a treatment plan with Minor that included surgery to remove the screws.

Minor testified that "when those screws were protruding on the back of my foot, it was difficult to get the – difficult to walk in the boot, difficult to have anything rub on there." (Minor Dep at 48). Minor further elaborated that Dr. Keyes told him the screws were "improperly placed" or "improperly done":

> Q. You don't recall Dr. Keyes ever saying anything to you about Dr. Hammersley performing an unnecessary surgery?
>
> A. I don't recall that; but if I can embellish for just a second, I do recall that the placement of the screws and how they weren't all the way in was improperly done. That was stated by Dr. Keyes and that was her frustration. That's what I recall.

(Minor Dep. at 49). This exchange continued on as follows:

> Q. During that surgery did Dr. Hammersley place screws into your left foot?
> A. Affirmative, sir.
> Q. And did Dr. Keyes then tell you subsequently that Dr. Hammersley improperly placed those screws in your left foot?

5

> A. That's what I recall, yes, sir.
> Q. …But you do not recall that Dr. Keyes told you that Dr. Hammersley's surgery was unnecessary?
> A. I don't recall her saying the whole portion of surgery was not necessary. I don't recall that.

(Minor Dep. at 49–50).

On February 24, 2016, Dr. Keyes performed surgery on Minor for "loosening screws, left foot." (ECF No. 22-1 at 24, 26–27). After Dr. Keyes removed the screws, Plaintiff's pain decreased in that area although it continued in others. Minor saw Dr. Keyes for a post-operative appointment on March 16, 2016.[2] Subsequently, Minor did not return to Dr. Keyes as she ceased seeing VA patients.

On April 14, 2016, Minor attended an appointment with Dr. Paul Cain from Advanced Foot and Ankle Clinic. Dr. Cain noted that Minor presented with severe left foot pain. Minor told Dr. Cain he had difficulty walking and standing on his left foot and it was very painful all the time. Minor told Dr. Cain he had surgery with Dr. Hammersley and his foot had not recovered since then.

In early March 2018, the VA contacted Minor and notified him that his continued pain may be the result of Dr. Hammersley's care and treatment. On March 15, 2018, Minor participated in a video conference at the Marion VA Medical Center. At the meeting, Minor was informed that a review of Dr. Hammersley's treatment and care of Minor had been conducted by Dr. Holly Becker, VA Doctor of Podiatric Medicine. Dr. Becker's review revealed that Dr. Hammersley's care of

---

[2] There is a dispute in the record about a visit to the ER by Minor on March 2, 2016 allegedly because he was having increased pain in his left foot and was unable to see Dr. Keyes. The Government asserts that Dr. Price's notes from that visit indicate he offered Minor a referral to podiatry at the Fort Wayne VA that day, but Minor refused and stated that he had so much trouble and had to have surgery due to what he felt was podiatry mismanagement. Minor testified that he does not recall being offered an appointment with podiatry at the Fort Wayne VA and does not recall refusing the appointment because of podiatry mismanagement. (Minor Dep. at 41–43). While there is a factual dispute on this point, the Court finds it is immaterial to its determination in this motion.

Minor fell below the standard of care in several areas, none of which need to be recounted in detail here.

Subsequently, Minor filed his administrative claim with the VA on July 23, 2018, by submitting a Standard Form 95 ("SF95"), claiming malpractice. On April 1, 2019, the VA denied his claim because the "tort claim is barred unless it is presented within two (2) years after the claim accrues…."

With respect to whether Minor knew or could have known sooner of the problems with his surgery, Dr. Hammersley testified at his September 7, 2019, deposition in a related case that in general it would be difficult for a patient to be able to differentiate between a normal post-op symptom and an injury that occurred during a surgery. (ECF No. 25-5 at 7). He also testified that it would be difficult for a patient, without any medical background or training, to be able to determine whether they had been the victim of malpractice.

### b. Facts Related to Equitable Tolling

In October 2015, several VA employees raised concerns about Dr. Hammersley's patient care and performance. Thereafter, an investigation of Dr. Hammersley's patient files commenced and at various times between April 2016 and February 2018 patient files of Dr. Hammersley were sent out for external review to Dr. Danae Lowell, a surgical podiatrist at theVA in Cleveland, Ohio. Following a recommendation by Dr. Lowell in May 2017, the VA notified Dr. Hammersley of his termination. Despite his termination, the VA's investigation into Dr. Hammersley's patient care continued. In July 2017, Dr. John Burns, chief of surgery at the VA, performed another internal review of Dr. Hammersley's surgical patients. By November and December 2017, additional concerns regarding Dr. Hammersley surfaced causing a review of all of Dr. Hammersley's surgical

cases. In the meantime, the VA began its first round of notifying affected veterans by way of institutional disclosures.

Minor's file was reviewed by the VA on January 21, 2018. (ECF No. 25-7 at 2). Minor received notice that Dr. Hammersley's care may have fallen below the standard of care in early March. Minor's video conference with the VA occurred on March 15, 2018, less than two months after his file was reviewed.

## DISCUSSION

### a. Claim Accrual

A plaintiff must file an FTCA claim "within two years after such claim accrues" or it is "forever barred." 28 U.S.C. § 2401(b); *Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997). An FTCA medical malpractice claim accrues when the plaintiff discovers the existence and cause of his injury. *United States v. Kubrick,* 444 U.S. 111, 122–24 (1979). Notably, accrual does not await "awareness by the plaintiff that [the] injury was negligently inflicted." *Id.* at 123. Rather, the statute of limitations begins to run when "an individual actually knows enough to tip him off that a governmental act (or omission) may have caused his injury; or a reasonable person in the individual's position would have known enough to prompt a deeper inquiry." *Arroyo v. United States*, 656 F.3d 663, 669 (7th Cir. 2011). Thus, it allows for either a subjective analysis or an objective analysis. *Blanche v. United States*, 811 F.3d 953, 958 (7th Cir. 2016).

In its Motion, the Government makes two assertions. First, it argues that plaintiff subjectively knew well before he filed his administrative claim in July 2018 that there was an issue with the surgery he received from Dr. Hammersley in July 2015. The Government argues that Minor must demonstrate that his claim "accrued" after July 23, 2016, which is two years prior to the date Minor filed his SF-95 with the VA. To this end, the Government argues that Minor was

"keenly aware" that his left foot was worse after the surgery than before and that the post-surgery pain in the back of his heel was caused by screws protruding into the back of his heel that were "improperly placed." (Gov't Br. at 14–15.) The Government points to complaints of pain by Minor to his physical therapist in December 2015, as well as his final follow-up visit with Dr. Hammersley where he complained of increased pain and trouble walking, especially pain in his left heel. The Government further emphasizes that Dr. Hammersley told Minor that the screws "were not all the way in." Dr. Hammersley's conclusion was confirmed by Dr. Keyes a month later, who told Minor that the screws were "improperly placed." Thus, on this point, the Government asserts that Minor knew as early as January or February 2016 of the existence and cause of his injury.

Second, the Government asserts that even if Minor was not actually aware before July 2016, he was objectively aware since a reasonably diligent person would have investigated further prior to that date, especially after learning that the screws were improperly placed. The Government goes on to chart all the post-surgical issues Minor experienced to persuade the Court that it was not objectively reasonable for Minor to not explore further whether he suffered an injury resulting from the surgery.

In response, Minor contends that his claim did not accrue until he received the letter from the VA notifying him that it had reviewed his records. It is then, he reasons, that he had information from which he could clearly attribute his foot pain to the podiatric surgery by Dr. Hammersley, i.e., government action. Minor points out that prior to his receipt of the VA's letter, Minor trusted that Dr. Hammersley provided competent and effective care and he believed Dr. Hammersley when he assured him that his post-surgical pain was a normal part of the recovery process. Additionally, Minor felt so comfortable about the care he received that he discussed a second

surgery on his right foot with Dr. Hammersley. Thus, Minor emphasizes his reasonable reliance on his treating doctor's evaluation and determination that his post-surgery condition was normal but for the displaced screws to circumvent the FTCA limitations period.

Minor correctly asserts that "plaintiffs seeking to understand the cause of an injury may reasonably rely on advice and assurances by doctors." *Chamness v. United States*, 835 F.2d 1350, 1353 (11th Cir. 1988). But that principle must be balanced against *Kubrick*'s guidance that "a claim accrues when the plaintiff knows both the existence and probable cause of his injury and not at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice." *Massey v. United States*, 312 F.3d 272, 277 (7th Cir. 2002) (citing *Kubrick,* 444 U.S. at 123). Here, the record demonstrates that while Dr. Hammersley may have assured Minor in October and November 2015 that his persistent ankle and heel pain was a normal part of the healing process, it is equally clear that by January 2016, Dr. Hammersley communicated something quite different to Minor. And, by February 2016, Dr. Keyes confirmed for Minor that something was amiss.

Even accepting the facts favorably to Minor, as the Court must, the Court concludes that Minor was sufficiently on notice by February 24, 2016, when Dr. Keyes performed the screw removal procedure, of the cause of his injury (the protruding screws) and the physician who was responsible for the injury (Dr. Hammersley). The Court acknowledges the undisputed record that throughout his initial post-operative visits, Minor appeared by all accounts to be recovering well and advancing through the healing process. Whatever discomfort or pain he had in the few months following surgery was rationally linked by Dr. Hammersley to the recovery process. Further, the Court accepts Minor's assertion that he had such confidence in Dr. Hammersley initially that he discussed with Dr. Hammersley having the same surgery on his right foot. But that is only one

snapshot in time, and does not account for the later-acquired information Minor obtained. Minor cannot rely solely on the positive assurances from his treating physician while at the same time turning a blind eye to other facts that may suggest negligence.

And, there are other undisputed facts here. As Minor's pain level began increasing, Minor admits being advised by Dr. Hammersley that the screws in his heel were "not properly in there" and the pain he was experiencing (at least in his heel) was caused by those improperly placed screws. He does not point to any assurances from Dr. Hammersley or any of his subsequent physicians that post-surgical screw displacement is a "normal event" common in the healing process.[3] Even more determinative are the admissions by Minor in his deposition that Dr. Keyes alerted him to her "frustration" that the screws were improperly placed thereby causing his heel pain. At this point, Minor may not have had actual knowledge of Dr. Hammersley's negligence, but he was well aware of sufficient facts that pointed down that road. Further, Minor did not need to understand the *exact* nature and severity of his injuries to understand that he was injured. Rather, "'[o]nce armed with knowledge that he has been injured and by whom, the potential malpractice plaintiff has reason to believe that he may have a legal claim; and he then has the statutory period in which to conduct the necessary investigation and prepare and file a suit.'" *Massey*, 312 F.3d at 276 (quoting *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994)).

Drawing all the reasonable inferences in Minor's favor, this Court concludes that the *Kubrick* standard is determinative, and that Minor had sufficient information, by at least late

---

[3] Minor argues that Dr. Hammersley's testimony in a related case that it would be difficult for a podiatric patient of his to identify medical negligence, is sufficient to create an issue of fact as to whether Minor should have known. The Court disagrees. First, as the Government points out, Dr. Hammersley was speaking in general terms, not opining on any particular set of facts. Second, the standard is not whether Minor knew there was malpractice, *Kubrick* requires only that Minor have enough information from which a reasonable person would have investigated further. In this case, the Court is satisfied that this occurred when he was told by Dr. Hammersley and Dr. Keyes that screws placed in his heel were improperly placed and required removal.

11

February 2016, to trigger the accrual period for an FTCA claim. Accordingly, because he filed his administrative claim more than two years after February 2016, on July 23, 2018, his FTCA claim is untimely and the Government is entitled to summary judgment.

**b.      Equitable Tolling**

Next, Minor argues that the court should apply the equitable tolling doctrine to deem his claim timely. *See United States v. Kwai Fun Wong*, 575 U.S. 402 (2015) (FTCA statute of limitations is not jurisdictional, and equitable tolling is permitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Credit Suisse Secs. (USA) LLC. v. Simmonds*, 566 U.S. 221, 227 (2012) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (emphasis omitted). The extraordinary circumstances element is met "only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. ——, 136 S. Ct. 750, 756, 193 L.Ed.2d 652 (2016) (emphasis in original)); *Carpenter v. Douma*, 840 F.3d 867, 872 (7th Cir. 2016). If that were not restrictive enough, the Supreme Court also cautions that the equitable tolling doctrine is to be applied "sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013) ("Equitable tolling is an extraordinary remedy and so is rarely granted.") (internal quotation marks and citation omitted). Minor bears the burden of establishing the equitable tolling elements. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418, (2005).

Minor has not met his burden. Although Minor contends that the VA intentionally concealed information from him and should have known sooner that Dr. Hammersley was committing malpractice, this is beside the point. Minor is required to show diligence on his part

12

and extraordinary circumstances "actually prevented him from either appreciating that he had a right to pursue a lawsuit or initiate one." *Ledwith v. United States,* 2020 WL 4260486 (E.D.Wi. July 24, 2020). Minor fails to explain how the VA specifically impeded his ability to pursue his rights, especially in light of this Court's above conclusion that his claim accrued based upon knowledge he had in February 2016. Further, the record does not reveal any "extraordinary" circumstances or attempts by the VA to thwart Minor's attempts to pursue his rights. For instance, there is no evidence that the VA knew about Dr. Hammersley's allegedly negligent conduct in Minor's case sooner than the time it undertook the review of his file in January 2018, or that the VA concealed documents or other evidence that would have aided Minor in filing his claim within the limitations period. Moreover, by his own admission, Minor did not pursue a claim until four months after his disclosure meeting. Thus, he was not actively pursuing his rights prior to March 15, 2018 and certainly cannot be said to have been prevented from doing so by any acts of the VA. Equitable tolling does not apply.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Government's Motion for Summary Judgment (ECF No. 21). The Clerk is directed to enter judgment in favor of the Government and against the Plaintiff.

SO ORDERED on September 17, 2020.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

!